## Mandel *v.* Scranton Life Insurance Company, Appellant.

Argued January 13, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert Dechert,* with him *Harrison H. Clement, William J. Fitzgerald, Barnes, Dechert, Price, Smith & Clark* and *Fitzgerald & Kelly,* for appellant.

*John W. Bour,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 22, 1948:

Abraham Mandel, appellee, instituted this action in assumpsit to recover disability benefits under a policy of life insurance issued to him by Scranton Life Insurance Company, appellant. Appellant denied liability for disability payments contending that the policy had lapsed by virtue of non-payment of a note given for a premium due December 14, 1935.

A jury was instructed to determine whether (1) appellant was estopped from asserting a lapse because of prior conduct, accepting payments for renewal of the note after the expiration of the 31-day period of grace; and (2) assuming that the policy had lapsed, had appellant failed to notify appellee of a rejection of the application within a reasonable time and was thereby precluded from thereafter asserting a rejection. The jury returned a verdict in favor of appellee for $5900 with interest. The court *en banc* dismissed appellant's motion for a new trial and entered judgment upon the verdict. This appeal followed.

Appellant, on June 14, 1928, issued a policy of life insurance to appellee which provided, *inter alia,* for monthly payments to insured, in the event of total and permanent disability before the age of 60 and while the policy was in force, of 2 per cent of the face value thereof for the first 12 months and 1 per cent thereafter. Semi-annual premiums were due December 14 and June 14.

The premium due December 14, 1935, was not paid on the due date, nor within the 31-day period of grace. Max Mandel, the son of appellee, on January 16, 1936, went to "the home office of the Scranton Life Insurance Company, and told the man in charge of the cashier's office on that day that (his) father, the insured, was unable to pay the semi-annual premium that was due on that day, and . . . asked if he had any suggestions as to what might be done. He gave (him) a note after he filled in certain information on it, and (Mandel) took it to (his) father, and he signed it, and (Mandel) returned with the note the next day, and a notation was made on the back that it was extended to February 14 . . ." On February 15, 1936, the son again went to the home office where he paid the fifty-three cents interest. In the presence of the son, the date, February 15, 1936, was stamped on the note and it was extended until March 14 1936. On March 16, 1936, the son again paid

fifty-three cents interest and, as before, the note was stamped and renewed to April 14, 1936. Similar transactions occurred on March 15, April 15, and May 15. On the last date, the note was extended to June 14, 1936. June 14, 1936 was Sunday, and on the following day Max Mandel was unable to arrive at appellant's offices until between 4:30 and 5:00 P.M., at which time the offices were closed. He returned the following morning and explained his inability to be present the day previous and sought arrangements for further extension of the note. He was told by the person in charge of the cashier's window that a certificate of health signed by the insured was necessary due to the fact that he had exceeded the period of grace by one day, and that a payment of $25, on account of the note, would be satisfactory. The certificate of health was signed by appellee and his son returned it to appellant's home office the following morning. The certificate of health was also an application for reinstatement of the policy.

Prior to the expiration of the period of grace, appellee paid by check the premium due June 14, 1936. Appellee heard nothing from appellant until sometime in September, three months later, when the two checks were returned to him and he was informed that because of his failure to submit to a physical examination the application for reinstatement of the policy had been refused and the company had converted it into a fully paid life insurance contract according to the terms of the policy. Thereafter, no further negotiations were had between insured and insurer. No additional premiums were ever tendered nor was complaint made to appellant with regard to what is now asserted to have been a wrongful forfeiture and failure to reinstate. Appellee became totally and permanently disabled June 1, 1938. On July 22, 1942, insurer was informed of this disability and that appellee intended to hold it liable for payments under the original policy of insurance. This action was instituted December 4, 1942.

Appellant contends that (1) the trial judge erred in permitting the jury to determine whether (a) appellant had waived its right to declare the policy lapsed because of the non-payment of premiums, and (b) appellee was advised of the rejection of the application for reinstatement within a reasonable time; and, (2) the uncontradicted evidence establishes an abandonment by appellee of all rights other than to a fully paid policy with a face value of $1257. The latter contention must be sustained.

The record conclusively establishes that appellee acquiesced in the insurer's act of declaring the lapse of the policy. Determination of the existence of a course of conduct by appellant with regard to the receipt of overdue premiums legally sufficient to warrant a finding by a jury that it had waived its right to insist upon strict compliance with the terms of the policy and to declare a forfeiture thereof, and whether, under the circumstances, failure for a period of three months to notify appellee that his application for reinstatement had been refused constituted an unreasonable time, thereby estopping it from asserting a rejection thereof, becomes unnecessary.

Appellant returned to the insured the $25 and the $106.60 checks not later than the middle of September, 1936. Whether they were accompanied by a letter of explanation is immaterial for insured knew that they had not been accepted for the purpose for which they were offered, namely, to continue the policy in force. He must have known also that the effect of the lapse would be to convert the policy into a fully paid policy of life insurance with a face value of $1257. No further premiums were tendered and no protest was ever made to appellant. There were no negotiations between the parties with regard to any matter whatsoever. Insured did not manifest any intention to hold appellant liable under the disability provisions until July 22, 1942, when the insurer was informed that appellee had become to-

tally and permanently disabled on June 1, 1938, and that benefits were claimed under the policy. The present action was instituted December 4, 1942, six years and three months after the checks had been returned.

An insured is not required to make tender of premiums where the insurer had by its action clearly informed the insured that the tenders would be refused: *Walsh v. Aetna Life Insurance Co.*, 352 Pa. 429, 440, 43 A. 2d 102. This does not mean, however, that regardless of circumstances surrounding the termination, an insured may remain inactive indefinitely. Mandel remained passive for six years and in no way disputed appellant's right to terminate the policy. The only reasonable conclusion to be deduced therefrom is that he acquiesced in the insurer's action and abandoned his original contract. In *Walsh v. Aetna Life Insurance Co.*, supra, this Court considered the issue of abandonment of a policy of life insurance. The quotation from the referee's finding is appropriate here (p. 442) : " 'Taking into account the fact that after notice of the lapse, the insured took no active steps to repudiate the asserted forfeiture, kept inactive and silent, made no objection to the notice of lapse, no tender of payment of premiums, and a period having elapsed equal to the period of the statute of limitations, the insured is held to have abandoned his contract of insurance, the policy in this suit.' "

The judgment of the court below is reversed; judgment is here entered for the appellant.